UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Case No.:
NELLY NAZARIO,

                      Plaintiff,                            **COMPLAINT**

     - against -

PROMED PERSONNEL SERVICES NY INC. and     **PLAINTIFF DEMANDS**
UNITED CEREBRAL PALSY OF NEW YORK CITY,     **A TRIAL BY JURY**
INC.

                     Defendant.
------------------------------------------------------------------X

Plaintiff, NELLY NAZARIO, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA") and the New York City Human Rights Law, New York City Administrative Code § 8-107(1), *et seq.*, and seek damages to redress the injuries Plaintiff has suffered for being subjected to discrimination and retaliation by Defendants based on her disability (Cervical Radiculopathy.)

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12101 *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in that both Defendants' principal places of business are located within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated June 30, 2015, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8. Plaintiff NELLY NAZARIO (hereinafter "NAZARIO") is a resident of the State of New York and County of Richmond.

9. Defendant PROMED PERSONNEL SERVICES NY INC. (hereinafter "PROMED") is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 16 West 36th Street, 7th Floor, New York, NY 10018.

10. Defendant UNITED CEREBRAL PALSY OF NEW YORK CITY, INC. (hereinafter "UCP") is a domestic not-for-profit corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 80 Maiden Lane, New York, NY 10038.

11. At all times relevant, Defendant UCP operates and/or maintains a branch in Staten Island, New York, where the majority of the discriminatory conduct referred to herein took place, located at 281 Port Richmond Ave, Staten Island, NY 10302.

12. At all times relevant, Plaintiff NAZARIO worked as a "Para Professional" in Defendant UCP's Staten Island Branch.

13. Upon information and belief, at all times relevant, Defendants UCP and PROMED were

joint employers of Plaintiff NAZARIO, were both empowered to hire and fire Plaintiff NAZARIO, to discipline and supervise Plaintiff NAZARIO,to set the terms and conditions of her employment, and to promulgate work rules and assignments.

14. Plaintiff's paychecks were issued by Defendant PROMED.

15. Defendants UCP and PROMED shall be herein referred to as "Defendants."

## MATERIAL FACTS

16. On or about April 29, 2013, Plaintiff NAZARIO began her employment with Defendant UCP, through Defendant PROMED, a medical staffing agency.

17. Plaintiff worked as a "Para Professional," in Defendant UCP's Staten Island Branch, earning $11 per hour.

18. As a "Para Professional" Plaintiff NAZARIO was assigned to provide individual care to a disabled student, assisting in the student's education and independence.

19. Plaintiff NAZARIO's duties included: assisting the student's nurse with an individualized plan of care, ensuring the student's comfort and safety in the classroom, helping load and unload the student from her or his transportation vehicle upon arrival and departure, and providing bilingual interpretation and assisting with feeding and toileting, as assigned.

20. Upon information and belief, Plaintiff NAZARIO was a good employee who loved her job.

21. Plaintiff NAZARIO informed the Director of Defendant UCP, Frank Mercogliono that she suffered from back pain, which substantially impaired her ability to lift, bend, and perform other manual tasks. Mr. Mercogliono promised Plaintiff NAZARIO that he was going to assign Plaintiff to a student who was not difficult for her to manage, as a reasonable accommodation.

22. However, the first student Mr. Mercogliono assigned to Plaintiff used a walker, requiring

Plaintiff NAZARIO to bend down to hold the walker behind the student to prevent him from running. Furthermore, the student required lifting onto a changing table, which was also difficult for Plaintiff NAZARIO to do as a result of her disability. Plaintiff's disability substantially impaired her ability to perform these functions of her job because it was very hard for her to bend over and lift. Nonetheless, Plaintiff NAZARIO continued to perform the essential duties of her job, without an accommodation.

23. Then, in or around May of 2013, Mr. Mercogliono assigned Plaintiff NAZARIO her second student, who was more difficult for Plaintiff to manage, as he was non-ambulatory and required more lifting, bending and transporting than the first student.

24. Upon learning that Mr. Mercogliono was assigning Plaintiff the aforementioned student, Angela, another Para Professional, said to Mr. Mercogliono, in front of Plaintiff NAZARIO, that the student would be difficult for Plaintiff to manage, due to her back issues. However, Mr. Mercogliono replied that Plaintiff NAZARIO could get help in the classroom.

25. Plaintiff NAZARIO's co-workers were perplexed by Mr. Mercogliono's decision to assign Plaintiff to work with a student who required more physical work, as he was aware of her disability.

26. About a week after Plaintiff NAZARIO was assigned to work with the second student, Plaintiff complained to Sally (Last Name Unknown) and Michelle (Last Name Unknown), employees of Defendant PROMED regarding the fact that Plaintiff was assigned to work with a student who required work that exacerbated her back issues rather than being given a reasonable accommodation for her disability.

27. By way of explanation, Plaintiff NAZARIO complained to Michelle because Michelle had reached out to Plaintiff NAZARIO to interview for Defendant PROMED prior to Plaintiff

being hired. While Plaintiff was in the interview with Michelle, Michelle contacted Defendant UCP to set up an interview for Plaintiff with Defendant UCP. Although Michelle had told Plaintiff she should follow directions given to her by Defendant UCP and that Defendant UCP would be giving Plaintiff her job assignments, Plaintiff reached out to Michelle to complain about Mr. Mercogliono's failure to accommodate Plaintiff because Michelle had told Plaintiff to reach out to her if Plaintiff had any issues or difficulties with her employment. Michelle also handled Plaintiff's time sheets.

28. Michelle told Plaintiff that she was going to speak with Mr. Mercogliono to see if "something could be done." However, when Plaintiff asked Mr. Mercogliono whether Michelle spoke with him, he replied in the negative.

29. Subsequently, Plaintiff called Michelle again to request that she speak to Mr. Mercogliono. Michelle claimed that she would speak to him. However, nothing changed.

30. On or about August 5, 2013, Plaintiff NAZARIO walked into an urgent care clinic, Ivy Urgent Care Four Corners, due to severe neck and back pain. Plaintiff was diagnosed with Cervical Radiculopathy and discharged later that day.

31. Plaintiff's doctor, Dr. Robert Malizia, ordered Plaintiff NAZARIO to stay home until August 7, 2013. In his note, Dr. Malizia stated that Plaintiff should be allowed to "perform duties that [did] not require regular lifting, as she has a serious neck condition which [was] being made worse by lifting at work."

32. Plaintiff NAZARIO faxed the letter to Defendant UCP immediately in order to be excused from work.

33. Upon Plaintiff NAZARIO's return to work, on or about August 7, 2013, Mr. Mercogliono asked to speak to Plaintiff privately.

34. Mr. Mercogliono informed Plaintiff NAZARIO that she could not work for Defendant UCP until she provided a doctor's note stating that Plaintiff could return to work on "full duty." Mr. Mercogliono then proceeded to tell Plaintiff NAZARIO "not to worry" about the week that followed, as the students would be on vacation from August 19, 2013 until September 11, 2013, and instructed Plaintiff to fax him the doctor's note.

35. Plaintiff NAZARIO asked Mr. Mercogliono for a reasonable accommodation for when she returned to work in September, whereby she could work with a student who did not require Plaintiff to lift and bend. Mr. Mercogliono responded that there would be thirty-five (35) new students coming back in September and he would see what he could do for Plaintiff, based on the students' needs.

36. Plaintiff NAZARIO reminded Mr. Mercogliono that other Para Professionals hired after Plaintiff were responsible for students who required less physical involvement, and asked whether Plaintiff could be switched with one of those employees.

37. Then, on or about August 12, 2013, Plaintiff NAZARIO visited her primary doctor, Dr. Kerry Kelly, and asked her for a referral to a neurologist. Dr. Kelly faxed Defendant UCP a note stating that Plaintiff NAZARIO could not return to "full duty" until she visited a neurologist. However, the note also stated that Plaintiff could return to work with the reasonable accommodation of no lifting or bending.

38. On August 19, 2013, Plaintiff NAZARIO visited a neurologist, Dr. Ludmila Feldman, who provided Plaintiff NAZARIO with a note, stating that Plaintiff could return to work on "full duty, provided suitable work conditions." Dr. Feldman advised Plaintiff that the student she was assigned at work should not require any bending or lifting.

39. Plaintiff NAZARIO faxed the letter to Mr. Mercogliono's secretary, Maria, on or about

6

August 20, 2013. Maria stated that she was going to give the note to Mr. Mercogliono when he returned to work that following Monday.

40. Subsequently, on or about August 26, 2013, Plaintiff NAZARIO called Mr. Mercogliono to confirm that he received the note. Plaintiff also communicated to Mr. Mercogliono Dr. Feldman's message that Plaintiff should be given the reasonable accommodation of being assigned a student that does not require any lifting or bending.

41. Mr. Mercogliono replied that maybe Plaintiff NAZARIO's job was not a good fit for her because of her back disability and failed to offer any alternative reasonable accommodations or engage in the interactive process.

42. Furthermore, Mr. Mercogliono stated that Defendant UCP may no longer need some of the Para Professionals and that Defendant PROMED would be notified accordingly. Plaintiff NAZARIO asked whether she was one of the Para Professionals who would "no longer be needed." Mr. Mercogliono responded that he did not know what was going to happen yet, but advised Plaintiff NAZARIO to speak with Defendant PROMED to see what "they could do" for Plaintiff.

43. Immediately thereafter, Plaintiff NAZARIO called Michelle who informed her that there were no layoffs by Defendant UCP. Plaintiff also spoke with Angelina (Last Name Unknown) and Shauntay (Last Name Unknown), two of the Para Professionals who were hired after Plaintiff NAZARIO and worked in the same classroom as Plaintiff, asking them if they were laid off. The women responded in the negative.

44. At that point, Plaintiff NAZARIO realized that Mr. Mercogliono lied to Plaintiff regarding the layoffs and was **terminating her based on her disability and in retaliation for her request for a reasonable accommodation**.

45. Plaintiff NAZARIO called Defendant UCP again, on or about September 16, 2013, hoping to get her job back, since the students had returned from vacation. However, Plaintiff NAZARIO was informed that Mr. Mercogliono was no longer at the Staten Island Branch.

46. The new director, Liz (Last Name Unknown), informed Plaintiff NAZARIO that if additional Para Professionals were needed, Defendant UCP would call her.

47. **As such, Defendants terminated Plaintiff NAZARIO in retaliation for her requesting a reasonable accommodation and discriminated against her on the basis of her disability.**

48. **Defendants discriminated against Plaintiff when they failed to engage in the interactive process and failed to provide Plaintiff with a reasonable accommodation for her disability.**

49. These are only some of the discriminatory acts to which Plaintiff NAZARIO was subjected solely on the basis of her disability.

50. **Defendants' actions and conduct were intentional and intended to harm Plaintiff NAZARIO.**

51. As a result of Defendants' actions, Plaintiff NAZARIO feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

52. As a result of the acts and conduct complained of herein, Plaintiff NAZARIO has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, physical injury, and other non-pecuniary losses.

53. **Plaintiff NAZARIO has further experienced severe emotional and physical distress.**

54. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff NAZARIO demands Punitive Damages as against Defendants.

### FIRST CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE AMERICANS WITH DISABILITIES ACT
### (As Against Defendant ProMed Only)

55. Plaintiff NAZARIO repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

56. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

57. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

58. Defendant engaged in an unlawful discriminatory practice against Plaintiff because of her disability, by failing to engage in an interactive process in providing Plaintiff with a reasonable accommodation and terminating Plaintiff based on her disability.

59. As such, Plaintiff NAZARIO has been damaged as set forth herein.

### SECOND CAUSE OF ACTION FOR RETALIATION
### UNDER THE AMERICANS WITH DISABILITIES ACT
### (As Against Defendant ProMed Only)

60. Plaintiff NAZARIO repeats and realleges each and every paragraph above as if said

paragraph was more fully set forth herein at length.

61. The ADA prohibits retaliation, interference, coercion, or intimidation.

62. 42 U.S.C. § 12203 provides:

   i. Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

   ii. Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

63. Defendant ProMed violated this section as set forth herein.

### THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

64. Plaintiff NAZARIO repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

65. The Administrative Code of City of New York § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

66. Defendants violated the section cited herein.

### FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

67. Plaintiff NAZARIO repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. The Administrative Code of City of New York § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

69. Defendants violated the section cited herein.

### FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

70. Plaintiff NAZARIO repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. The New York City Administrative Code § 8-107(13) "Employer liability for discriminatory conduct by employee, agent or independent contractor" provides:

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      1. the employee or agent exercised managerial or supervisory responsibility; or

      2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

  c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

72. Defendants violated the section cited herein as set forth.

## JURY DEMAND

73. Plaintiff NAZARIO requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff NAZARIO respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, and the New York City Administrative Code, § 8-107 *et seq.*, in that Defendants discriminated and retaliated against Plaintiff NAZARIO on the basis of her disability;

B. Awarding damages to Plaintiff NAZARIO for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff NAZARIO compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to their reputation in an amount to be proven;

D. Awarding Plaintiff NAZARIO punitive damages;

E. Awarding Plaintiff NAZARIO attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff NAZARIO such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
September 3, 2015

                                                   **PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: _____
Nicole Welch, Esq.
Dorina Cela, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
nwelch@tpglaws.com
dcela@tpglaws.com