USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/19/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
NELLY NAZARIO,                                               :
                                        Plaintiff,           :
                                                             :    15 Civ. 6989 (LGS)
         -against-                                           :
                                                             :    **OPINION AND ORDER**
                                                             :
PROMED PERSONNEL SERVICES                                    :
NY INC., et al.,                                             :
                                        Defendants.          :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Nelly Nazario brings this action against Defendants Promed Personnel Services NY Inc. ("Promed") and United Cerebral Palsy of New York City, Inc. ("UCP"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. Defendants Promed and UCP separately move for summary judgment on Plaintiff's claims. Promed also moves for summary judgment on cross-claims made by UCP or, in the alternative, to sever those claims. For the following reasons, Promed's motion for summary judgment against Plaintiff is granted in part and denied in part; UCP's motion for summary judgment against Plaintiff is denied; and Promed's motion for summary judgment on UCP's cross-claims is denied.

I.  **BACKGROUND**

The following facts are drawn from the evidence submitted by the parties in connection with these motions. For purposes of this Opinion, all factual disputes are resolved, and all reasonable inferences are drawn, in favor of the non-moving party. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016).

### A. Promed

Defendant Promed is a staffing agency that places health care professionals with outside organizations. When a client advises Promed of a staffing need, Promed identifies prospective applicants, conducts an initial interview and then sends applicants to the client to be interviewed. If the client approves an applicant, such as Plaintiff, Promed screens her, and if she successfully completes the screening, Promed hires her and assigns her to work for the client.

Promed is the employer of record for such employees and is responsible for determining their wages, paying them and handling their taxes, insurance and worker's compensation. Promed also retains the authority to fire, discipline and transfer its employees. According to the "Employee Grievance Policy" in Promed's employee handbook, if a Promed employee believes that she is being discriminated against, the employee shall not leave her job assignment but shall immediately contact Promed's corporate offices, notify her supervisor at the facility, follow the facility supervisor's instructions, ask that a Promed representative be included in hearing the instructions and await direction from Promed about how to proceed.

UCP is Promed's only client who uses paraprofessionals such as Plaintiff.

### B. UCP

Defendant UCP is a not-for-profit agency whose Staten Island Children's Program provides comprehensive educational and therapeutic services for young children with physical and/or developmental disabilities. The program has two sessions each year -- one that runs from September to June and a six-week summer session that finishes in August. Many students in the program require a one-to-one paraprofessional to assist them. The majority of these students require their paraprofessional to lift and position them, as well as bend, kneel and move heavy objects.

Pursuant to an agreement between Promed and UCP dated January 18, 2013, if a student required a one-to-one paraprofessional, UCP would request, and Promed would provide, paraprofessional applicants to be interviewed.  After interviewing candidates, UCP would select which candidates to hire and assign them to individual students. If a given paraprofessional was not working out, UCP could dismiss her.

### C. Plaintiff's Relationship with Promed and UCP

On April 5, 2013, Plaintiff applied to Promed for a paraprofessional position at UCP. Promed arranged for Plaintiff to interview with Frank Mercogliano, the director of the UCP Staten Island Children's Program.  After the interview, UCP informed Plaintiff that she would be working at UCP.  On April 21, 2013, Promed hired Plaintiff as an employee.  Plaintiff received employee training from Promed, and signed a number of forms for Promed, including a form that acknowledges her understanding that she was a Promed employee and that only Promed could terminate her employment.  Plaintiff further acknowledged her understanding that if an assignment ended, she should report to Promed for a new one.

On around April 29, 2013, Promed assigned Plaintiff to UCP's Staten Island Children's Program as a paraprofessional.  UCP set the days and hours that Plaintiff worked.  Plaintiff was supervised by the UCP teacher in her classroom and asked the teacher any questions she had about her duties and responsibilities as a one-to-one paraprofessional.  When Plaintiff needed time off, she contacted UCP.  Plaintiff was never informed that her position might be temporary.

UCP initially assigned Plaintiff to a student who was very "hyper" and required Plaintiff to lift and bend.  Other students were easier to care for.  Approximately four to six weeks after she began working at UCP, Plaintiff told Mercogliano that she was experiencing neck and back pain as a result of looking after her student, and requested reassignment to another child.

3

Mercogliano said that he would "see what he could do." Approximately two weeks later, Mercogliano assigned Plaintiff to a student who was more physically demanding than her first child. Plaintiff's second student could not walk, lift himself up or sit up by himself. Plaintiff had to lift him, take him out of his chair and carry him to the changing table. Mercogliano told Plaintiff that her second student was the only other child available.

While Plaintiff's second student might have been the only child without an assigned one-to-one paraprofessional at that time, Plaintiff could have been reassigned to an easier child if UCP had switched her with another paraprofessional. Two of the paraprofessionals who were hired after Plaintiff were assigned to children who did not require lifting, and some children had paraprofessionals for predominantly emotional needs. Mercogliano never considered switching Plaintiff to one of these students. When Plaintiff asked Mercogliano to switch her with another paraprofessional, he told her that reassignments are difficult because parents do not like when their child's paraprofessional is changed. Plaintiff contacted Promed for help obtaining an accommodation, but Promed did not contact Mercogliano.

On June 17, 2013, Plaintiff was treated for neck pain at an urgent care clinic and reported the visit to UCP. On August 5, 2013, she returned to the clinic for significant neck pain. The clinic diagnosed her with cervical radiculopathy, provided her a note excusing her from work until August 7, 2013, and requested that she be excused from work duties requiring regular lifting. When Plaintiff returned to work on August 7, 2013, Mercogliano told her that she could not return until she had a doctor's note approving her for full duty. Plaintiff again contacted Promed for help obtaining an accommodation for her neck problems. Promed again did nothing, despite assurances that they would contact UCP.

On August 12, 2013, Plaintiff submitted a doctor's note to UCP advising that she was

4

prohibited from lifting and could not return to full duty until she was seen by a neurologist. On August 19, 2013, Plaintiff saw a neurologist, who approved her return to work on August 26, 2013, provided appropriate restrictions were in place. At that time, the Staten Island Children's Program was on a break and would not restart until September. When Plaintiff contacted UCP in late August about returning to work, Mercogliano told her that some paraprofessionals would be laid off, but that the program had 35 new children coming in and that he would see what he could do for her in September based on the needs of those children.

On September 11, 2013, Plaintiff called UCP to inquire about further employment. UCP informed her that they did not need anyone at that time, but would call if they did. Plaintiff did not call Promed to seek other employment. An internal Promed file on Plaintiff includes an entry dated January 10, 2014, which states "DO NOT SEND TO UCP."

## II. STANDARD

Summary judgment is appropriate when the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016). Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at

5

255. "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (citation omitted). Instead, a party asserting that a fact is genuinely disputed "must support the assertion" by citing to the record or showing that "the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

## III. DISCUSSION

### A. Elements of Disability Discrimination and Retaliation Claims Under the ADA and NYCHRL

#### 1. The ADA

The Complaint asserts two causes of action against Promed for discrimination and retaliation under the ADA based on three theories -- (1) discriminatory discharge on account of Plaintiff's disability; (2) retaliatory discharge as a result of Plaintiff requesting a reasonable accommodation and (3) discriminatory failure to provide reasonable accommodation to Plaintiff's disability.

##### a. Discriminatory Discharge and Retaliatory Discharge

Title I of the ADA prohibits discrimination in employment "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA also prohibits retaliation against an individual who has "opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a).

On a motion for summary judgment, discrimination claims under the ADA are analyzed using the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). For a claim of discriminatory discharge, first, a plaintiff must establish

a prima facie case by demonstrating that he was discharged under circumstances giving rise to an inference of discriminatory intent. Second, if the Plaintiff is successful, "the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and [third,] the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Cortes v. MTA N.Y.C. Tr.*, 802 F.3d 226, 231 (2d Cir. 2015); *accord Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016). The Second Circuit has not resolved the question of whether but-for causation is required for a claim of discriminatory discharge under the ADA, or whether mixed motives are sufficient to prove causation. *See Forrester v. Prison Health Servs.*, 651 F. App'x 27, 28 (2d Cir. 2016); *Bolmer v. Oliveira*, 594 F.3d 134, 148 (2d Cir. 2010).

The analysis is the same for a claim of retaliatory discharge under the ADA, except the intent issue is whether plaintiff was discharged on account of engaging in protected activity, rather than whether plaintiff was discharged because of a qualifying disability. *See Widomski v. State Univ. of N.Y. (SUNY) at Orange*, 748 F.3d 471, 476 (2d Cir. 2014) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (ADA retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework); *Treglia*, 313 F.3d at 719 (to establish prima facie case of retaliation under ADA, plaintiff must demonstrate that adverse employment action occurred as a result of engaging in protected activity of which employer was aware). Requesting a reasonable accommodation is protected activity under the ADA. *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002).

"There is . . . an unsettled question of law in this Circuit as to whether a plaintiff must show, in order to succeed on her ADA retaliation claim, that the retaliation was a 'but-for' cause of the termination or merely a 'motivating factor.'" *Eisner v. Cardozo*, 16-872-CV, 2017 WL

7

1103437, at *1 (2d Cir. Mar. 24, 2017) (citing *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 n.3 (2d Cir. 2014)).

### b. Failure to Provide Reasonable Accommodation

Discrimination under the ADA includes the failure to make "reasonable accommodations to the known physical . . . limitations" of an otherwise qualified employee, unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business . . . ." 42 U.S.C. § 12112(b)(5)(A); *see also Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). When an employer is aware of an employee's disability, the ADA "envisions an interactive process" by which the employer and employee work together to assess whether such accommodation is possible. *See Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017) (citation omitted). A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . appropriate adjustment or modification of . . . policies . . . and other similar accommodations," 42 U.S.C. §§ 12111(9), but may "never involve the elimination of an essential function of a job." *Stevens*, 851 F.3d at 230 (citation omitted).

To establish a prima facie case of discrimination for failure to provide a reasonable accommodation under the ADA, a plaintiff must demonstrate that "(1) [she has] a disability under the meaning of the ADA; (2) [the defendant, an entity covered by the ADA] had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the [covered entity] has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013). If no reasonable accommodation existed at the time of an employee's dismissal, the employee cannot recover based on her employer's "failure to engage" in the "interactive process" contemplated by the

8

ADA. *Stevens*, 851 F.3d at 231 (citation omitted).

The third element of a reasonable accommodation claim raises three distinct issues -- (1) what the essential functions of the job are; (2) whether an accommodation exists and (3) whether the proffered accommodation is reasonable. In determining whether a job function is essential, courts consider

> the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions. Courts must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position, but no one listed factor will be dispositive. Courts must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice."

*Id.* at 229 (internal quotation marks and citations omitted); *see also* 29 C.F.R. § 1630.2(n)(3).

As for the other two issues, "the plaintiff bears the burden of proving . . . that an accommodation exists that permits her to perform the job's essential functions. If the plaintiff meets that burden, the analysis shifts to the question whether the proposed accommodation is reasonable; on this question the burden of persuasion lies with the defendant." *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000) (internal citations omitted). In other words, "the plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to perform the essential functions of [her] employment." *McMillan*, 711 F.3d at 126 (internal citation omitted). On the issue of whether the proffered accommodation is reasonable, the plaintiff bears only the burden of production, and the defendant bears the burden of persuasion to show that an accommodation is not reasonable, "merging" with the affirmative defense that the proposed accommodation imposes an undue

9

hardship.  *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).[1]

## 2. The NYCHRL

The Complaint asserts two claims against both Promed and UCP for discrimination under the NYCHRL for discharging Plaintiff and discriminating against her in the conditions and privileges of employment, including through the conduct of an employee or agent, as a result of her disability.[2]

The NYCHRL prohibits employers and their agents from engaging in employment discrimination on the basis of an employee's "actual or perceived . . . disability."  N.Y.C. Admin. Code § 8-107(1)(a).  Employers and agents may not discharge, refuse to hire or otherwise discriminate against disabled individuals.  *See id.*  Employers and agents must "make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known by the [employer]."  *Romanello v. Intessa Sanpaolo, S.p.A.*, 998 N.E.2d 1050, 1053 (N.Y. 2013) (quoting N.Y.C. Admin. Code § 8-107(15)(a)).

Employers are liable under the NYCHRL for discriminatory conduct of an employee or agent who exercised managerial or supervisory responsibility.  *See* N.Y.C. Admin. Code § 8-

---

[1] The *McDonnell Douglas* burden shifting test does not apply to a claim for failure to accommodate.  *Cf. McMillan*, 711 F.3d at 129 (finding that *McDonnell Douglas* analysis need not be used when it is not helpful).  The test logically addresses claims for discrimination under ADA § 12112(a)  -- i.e., claims alleging discrimination in the hiring, advancement, discharge, compensation of an individual with a disability -- as the test focuses on the employer's rationale for an adverse employment action.  *See McDonnell Douglas Corp.*, 411 U.S. 792.  However, the claims based on § 12112(b) have their own intent requirements.  The failure to accommodate provision in § 12112(b)(5)(A) deals with state of mind implicitly by excusing the adoption of accommodations that are unreasonable or would cause undue hardship.  Applying the *McDonnell Douglas* test to a failure to accommodate claim is not helpful and could introduce unwarranted intent requirements into the analysis.

[2] The Complaint asserts five causes of action, but the third and fourth causes of action are identical and are therefore treated as a single cause of action.

107(13)(b). Employers are also liable for an employee or agent's failure to reasonably accommodate an employee's disability. *See id.* § 8-107(13)(a).

"[I]n order to obtain summary judgment on an NYCHRL claim, a defendant must show that 'no jury could find defendant liable under any of the evidentiary routes: under the *McDonnell Douglas* test, or as one of a number of mixed motives, by direct or circumstantial evidence.'" *Gioia v. Forbes Media LLC*, 501 F. App'x 52, 56 (2d Cir. 2012) (summary order) (quoting *Bennett v. Health Mgmt. Sys., Inc.*, N.Y.S.2d 112, 116 (1st Dep't 2011); *see also Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (applying *McDonnell Douglas* burden-shifting analysis to NYCHRL claim).

To state a prima facie case of disability discrimination under the NYCHRL, a plaintiff must demonstrate that "(1) [she] was a member of a protected class; (2) [she] was competent to perform the job in question, or was performing the job duties satisfactorily; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." *Spiegel*, 604 F.3d at 80.

To state a prima facie claim for failure to accommodate a disability under the NYCHRL, a plaintiff must demonstrate that "the employee suffers from a statutorily defined disability and the disability caused the behavior for which the employee was terminated." *Jacobsen v. N.Y.C. Health & Hosps. Corp.,* 11 N.E.3d 159, 166 (N.Y. 2014). For failure to accommodate claims under the NYCHRL, the employer has the "pleading obligation to prove that the employee could not, with reasonable accommodation, satisfy the essential requisites of the job." *Romanello*, 998 N.E.2d at 1053 (citation omitted); *see also Makinen v. City of New York*, 857 F.3d 491, 2017 WL 2218716, at *3 n.3 (2d Cir. May 22, 2017). The NYCHRL defines "reasonable accommodation" broadly to include any "such accommodation that can be made that shall not cause undue

11

hardship in the conduct of the [employer's] business." N.Y.C. Admin. Code § 8-102(18).³

The NYCHRL affords broader protections than the ADA, and dismissal of a plaintiff's ADA disability discrimination claim does not necessarily require dismissal of a plaintiff's identical NYCHRL claim. *See Elmessaoudi v. Mark 2 Rest. LLC*, No. 14 Civ. 4560, 2016 WL 4992582, at *8 (S.D.N.Y. Sept. 15, 2016).

### B. Promed's Motion for Summary Judgment Against Plaintiff

Plaintiff has not adduced evidence to support a prima facie case of employment discrimination by Promed for failure to accommodate under the ADA. Plaintiff argues that because Promed failed to call UCP on her behalf to help her obtain a reasonable accommodation from UCP, Promed is liable for failing to engage in an "interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."

First, accepting all facts and drawing all inferences in favor of Plaintiff, Promed's failure to call UCP does not constitute a reasonable accommodation within the meaning of the ADA. A reasonable accommodation enables an employee to perform the basic functions of her job, and can include job restructuring, modifications to a work schedule, reassignment to a vacant position and other similar accommodations. *See Stevens*, 851 F.3d at 230; 42 U.S.C. § 12111(9). While a phone call from Promed staff might have persuaded UCP to grant Plaintiff an accommodation, a phone call itself would not have enabled Plaintiff to do her job as a paraprofessional. Thus, Promed did not fail to accommodate Plaintiff when Promed failed to call UCP on Plaintiff's behalf.

---

³ For the same reasons explained in footnote 2, the *McDonnell Douglas* burden shifting test does not apply to a claim for failure to accommodate under the NYCHRL. *Cf. McMillan*, 711 F.3d at 129 (finding that *McDonnell Douglas* analysis need not be used when it is not helpful).

Second, Promed's alleged failure to "engage in an interactive process" with respect to finding Plaintiff an accommodation at UCP does not constitute an independent violation of the ADA. *See Stevens*, 851 F.3d at 231 (citation omitted). To the extent that Plaintiff attempts to rely upon *Phillips v. City of New York*, 884 N.Y.S.2d 369 (1st Dep't 2009), to support the conclusion that summary judgment in an ADA claim is inappropriate where there is a genuine dispute as to whether an employer has engaged in the interactive process in good faith, such reliance is misplaced. First, the case deals with the NYCHRL, rather than the ADA. Second, the New York Court of Appeals has rejected that interpretation of *Phillips*. *See Jacobsen*, 11 N.E.3d at 169 ("to the extent the Appellate Division's decision in *Phillips* can be interpreted as implying that a good faith interactive process is an independent element of the disability discrimination analysis under [the NYCHRL] which, if lacking, automatically compels a grant of summary judgment to the employee . . ., we reject that notion."). Instead, the employer's "decision to engage in or forgo an interactive process is but one factor to be considered in deciding whether a reasonable accommodation was available for the employee's disability at the time the employee sought accommodation." *Id.* Where, as here, no accommodation was available, an employer's alleged failure to engage in the interactive process does not compel a finding for Plaintiff.

Third, accepting all facts and drawing all inferences in favor of Plaintiff, she has not adduced evidence sufficient to show that Promed could have reasonably accommodated her by assigning her to another Promed client. Promed hired Plaintiff as a paraprofessional to work at UCP and had no other clients who used paraprofessionals. Plaintiff has adduced no evidence to show that Promed could have placed her elsewhere. Consequently, Promed is entitled to summary judgment on Plaintiff's claims for failure to accommodate under the ADA.

Promed does not address (1) Plaintiff's claim of retaliation in violation of the ADA, (2)

13

Plaintiff's claim that Promed discriminated against her by failing to accommodate her disability under the NYCHRL or (3) Plaintiff's claim that Promed effectively terminated her employment with Promed in violation of the ADA and NYCHRL by failing to find her suitable employment following her request for accommodation.[4] Accordingly, Promed's motion for summary judgment is denied as to these claims. *See* Fed. R. Civ. P. 56(c)(1); *Victory*, 814 F.3d at 58–59.

## C. UCP's Motion for Summary Judgment Against Plaintiff

Plaintiff asserts claims against UCP only under the NYCHRL. In support of its motion for summary judgment against Plaintiff, UCP argues (1) that it was not Plaintiff's employer and therefore not subject to the NYCHRL's employment discrimination provisions and (2) that Plaintiff cannot establish a prima facie case of disability discrimination. These arguments are unsuccessful.

### 1. UCP As Plaintiff's Employer

UCP's liability under the NYCHRL is premised on its status as Plaintiff's employer. In determining whether an entity is an employer under the NYCHRL, courts generally look to four elements: "(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct." *Griffin v. Sirva Inc.*, 835 F.3d 283, 291 (2d Cir. 2016) (internal citation omitted) (applying same test to employment claim under the New York State Human Rights Law ("NYSHRL")); *see also Urena v. Swiss Post Sols., Inc*., 2016 WL 5173389, at *3 (S.D.N.Y. Sept. 21, 2016) (applying same test to determine employer relationship for NYSHRL and NYCHRL).

---

[4] Promed mentions Plaintiff's NYCHRL claims only once in its Memorandum in Support of its Motion for Summary Judgment, stating in the Conclusion that Plaintiff failed to make out a prima facie case under the ADA, and also under "the New York City Civil Rights Law [sic] which parallels the ADA." However, as explained above, the burden of proof for a NYCHRL claim is different and less demanding than for an ADA claim.

An entity may be held liable for employment discrimination against a person whom it does not technically employ if the entity "handle[s] certain aspects of the[] employer-employee relationship jointly" with the employer of record. *See Griffin*, 835 F.3d at 292 (internal citation omitted). "The joint employer doctrine has been applied to temporary employment or staffing agencies and their client entities." *Haight v. NYU Langone Med. Ctr., Inc.*, No. 13 Civ. 4993, 2014 WL 2933190, at *11 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); *see also, e.g.*, *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 146–48 (2d Cir. 2008) (finding that hospital was joint employer when it directly supervised temporary worker and otherwise exercised control over her).

To determine whether an entity can be considered a joint employer, courts evaluate "whether the alleged [joint] employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *See Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012) (citation omitted); *see also Serv. Emps. Int'l Union, Local 32BJ v. Nat'l Labor Relations Bd.*, 647 F.3d 435, 442 (2d Cir. 2011) ("[A]n essential element of any joint employer determination is sufficient evidence of immediate control over the employees . . . ." (citation omitted)).

Accepting all facts and drawing all inferences in Plaintiff's favor, Plaintiff has submitted evidence from which a reasonable jury could find that UCP jointly employed Plaintiff with Promed. *See Ling Nan Zheng v. Liberty Apparel Co.*, 617 F.3d 182, 185 (2d Cir. 2010) (in FLSA action, question of whether defendant was plaintiff's joint employer was properly before the jury as mixed question of law and fact). UCP made the decisions to hire Plaintiff and not to offer her a continued position after the summer break. UCP supervised and controlled Plaintiff's

15

work schedule.  It determined her assignments -- which student Plaintiff would assist, the hours and dates she would be working -- and handled her requests for leave.  When Plaintiff had questions about her job functions and performance, she spoke to UCP supervisory staff.  Based on evidence that UCP both directly supervised Plaintiff and exercised control over her employment, UCP could be found liable as a joint employer.

UCP also may be held liable under the loaned servant doctrine.  The loaned servant doctrine provides that "an employee directed or permitted to perform services for another 'special' employer may become that employer's employee while performing those services." *Haight*, 2014 WL 2933190 at *10 (quoting *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F. Supp. 344, 349 (S.D.N.Y. 1984)).  The key factor in determining whether the loaned servant doctrine applies is "the 'special' employer's exclusive right to supervise the employee's work during the period of temporary service."  *Amarnare*, 611 F. Supp. at 349.

Under the loaned servant doctrine, "a person whose salary is paid by one entity while [her] services are engaged on a temporary basis by another is an employee of both entities."  *Id.* (citation omitted) (finding that a temporary employee was employed by both her staffing agency and the company where she worked because she was subject to the direction of the company in work assignments, hours of service, and other usual aspects of an employee-employer relationship and because the company had the right to discharge her and request a replacement from the staffing agency if her work was unsatisfactory).  Here, though Promed paid Plaintiff's salary, UCP supervised her, controlled her hours and work assignments, decided to hire her and decided not to rehire her.  Based on this evidence, a reasonable jury could find that UCP was Plaintiff's employer under either the joint employer doctrine or the loaned servant doctrine.

16

### 2. Failure To Provide Reasonable Accommodation

Contrary to UCP's argument, Plaintiff has submitted evidence from which a reasonable jury could find that UCP failed to make reasonable accommodation for Plaintiff's disability. First, Plaintiff has adduced facts sufficient to show that she has a disability as defined in the NYCHRL, specifically, cervical radiculopathy, a neck injury that prevents her from lifting. *See* N.Y.C. Admin. Code § 8-102(16). Second, Plaintiff has submitted evidence that UCP had notice of her disability. Plaintiff submitted multiple doctor's notes and repeatedly requested accommodation of her disability from UCP. Third, resolving all factual disputes in Plaintiff's favor, the evidence shows that Plaintiff could have continued in her work as a paraprofessional if UCP had transferred her to a student with largely emotional rather than physical needs. Fourth, UCP declined to make such a transfer.

UCP argues that lifting was an essential function of Plaintiff's job as a paraprofessional and that, because she could not perform this essential function, no accommodation was possible. However, a reasonable jury could find that lifting was not an essential function of Plaintiff's position as a paraprofessional, as some students did not require lifting, and some had largely emotional needs. Plaintiff has adduced sufficient evidence to demonstrate that she was capable of caring for these students and that UCP could have transferred her to one of them but declined to do so. Thus, UCP's motion is denied as to Plaintiff's claim for failure to accommodate under the NYCHRL.

### 3. Decision Not To Hire Plaintiff for the New School Year

UCP also contends that summary judgment is appropriate on Plaintiff's discrimination claim because she cannot establish a prima facie case of discrimination based on UCP's decision not to invite her back as a paraprofessional when the new school year started in September 2013.

17

"The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." *Walsh v. N.Y. City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016); *accord Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 31–32 (1st Dep't 2012). Plaintiff has adduced facts sufficient to establish a prima facie case of discrimination based on UCP's decision not to hire her for the new school year.

First, as discussed above, Plaintiff was member of a protected class on account of her disability under the NYCHRL at the time of her termination. *See Zick v. Waterfront Comm'n of N.Y. Harbor*, No. 11 Civ. 5093, 2012 WL 4785703, at *8 (S.D.N.Y. Oct. 4, 2012) ("disability is a NYCHRL-protected class"). Second, accepting Plaintiff's evidence that lifting was not an essential part of her job as a paraprofessional, Plaintiff was capable of performing the job in question. Third, Plaintiff suffered an adverse employment action when UCP decided not to bring her back as a paraprofessional for the new school year. Fourth, UCP's decision not to bring her back occurred within weeks of Plaintiff's repeated and unsuccessful requests for a reasonable accommodation from UCP, which gives rise to an inference that UCP did not ask Plaintiff back on account of her disability. *Cf., e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (in evaluating retaliation claim, three-week period from protected activity to termination was "sufficiently short to make a *prima facie* showing of causation indirectly through temporal proximity"). Based on this evidence, Plaintiff has made out a prima facie case of discrimination.

UCP argues that Plaintiff did not suffer an adverse employment action as she was a temporary employee whose assignment ended at the end of the school term in August 2013, and she had no guarantee that she could return at the start of the new school year. However, nothing in the record says that Plaintiff's position was temporary, nor was she told that it was. UCP

18

indicated that it would attempt to find Plaintiff a position following the summer recess. Drawing all inferences in favor of Plaintiff, she has adduced sufficient evidence to make out a prima facie case that her position was not temporary, and that when UCP declined to keep her on for the following year, UCP materially and adversely changed her conditions of employment.

UCP does not try to establish step two of the *McDonnell Douglas* analysis -- that it had a legitimate, non-discriminatory reason for discharging Plaintiff. Instead, UCP attempts to argue that Plaintiff did not suffer an adverse employment action at all, given that she was only temporarily assigned to UCP and not guaranteed to be re-assigned to UCP for the new school year. However, as explained above, Plaintiff has adduced sufficient evidence to show that her position was not temporary and that she suffered an adverse employment action. UCP's motion for summary judgment is denied as to Plaintiff's disability discrimination claim for adverse employment action.

### D. Promed's Motion for Summary Judgment Against UCP

Promed also moves for summary judgment on UCP's cross-claims for indemnification, or in the alternative to sever the cross-claims from the main case. As "[c]laims for indemnification do not generally ripen until a judgment in the underlying action is paid," *Cucchiara v. Hollingsworth*, No. 15 Civ. 314, 2016 WL 6068193, at *8 (S.D.N.Y. Oct. 14, 2016) (compiling cases), Promed's motion for summary judgment on the cross-claims is denied as premature. If and when judgment is entered against UCP, the parties shall submit letter briefs articulating their positions on whether the Court should exercise supplemental jurisdiction over UCP's cross-claims.

## IV. CONCLUSION

For the foregoing reasons, Promed's motion for summary judgment against Plaintiff is

GRANTED in part and DENIED in part, and Plaintiff's claims for retaliation under the ADA, discrimination for failure to accommodate under the NYCHRL and discriminatory discharge under the ADA and NYCHRL survive. UCP's motion for summary judgment against Plaintiff is DENIED, and Promed's motion for summary judgment against UCP is DENIED.

The Clerk of Court is respectfully directed to close the motions at Docket No. 61 and Docket No. 81.

Dated: June 19, 2017
      New York, NY

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**